[Cite as *State v. VonStein*, 2021-Ohio-2984.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO/CITY OF HAMILTON, | : | |
| Appellee, | : | CASE NO. CA2020-11-111 |
| | : | O P I N I O N |
| - vs - | | 8/30/2021 |
| | : | |
| JESSE H. VONSTEIN, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case No. 19CRB03760A

Repper-Pagan Law, Ltd., and Christopher J. Pagan, for appellant.


**BYRNE, J.**

{¶1}   The Hamilton Municipal Court found Jesse VonStein guilty of aggravated menacing following a bench trial.  VonStein appealed from the court's Judgment Entry of Conviction.  Based on a defective jury waiver, we reverse and vacate VonStein's conviction and remand for further proceedings.

**I.  Factual and Procedural History**

{¶2}   In September 2019, the Butler County Sheriff's Office filed a complaint charging VonStein with aggravated menacing.  The complaint stated that VonStein, in the midst of a dispute with a neighbor, told the alleged victim that he would "rip your lungs out."

In October 2019, law enforcement served VonStein with the warrant on the complaint. The same month, VonStein, through counsel, filed a written jury demand.

{¶3} VonStein's jury trial was scheduled to begin in October 2020. However, a few days before trial, VonStein's counsel appeared before the trial court and represented that VonStein – who was not present – had authorized a bench trial via telephone. Based on counsel's representation, the court granted the request for a bench trial and provided counsel with a written jury trial waiver form. Counsel signed the form on behalf of VonStein, noting "per phone authorization." Counsel thereafter filed the jury waiver.

{¶4} At the commencement of the bench trial, the court noted that VonStein was present with his counsel, that the matter had been set for a jury trial, but that the jury was waived, and now it would be a trial to the bench. The trial then commenced.

{¶5} Following the trial, the court found VonStein guilty as charged. VonStein appeals, raising three assignments of error.

## II. Legal Analysis

{¶6} Assignment of Error No. 1:

{¶7} THE TRIAL COURT ERRED BY EXERCISING JURISDICTION WITHOUT A VALID JURY WAIVER.

{¶8} VonStein argues that the trial court failed to have him acknowledge his jury waiver in open court under R.C. 2945.05 and therefore the court lacked jurisdiction to conduct a bench trial. R.C. 2945.05 provides:

> In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof. It shall be entitled in the court and cause, and in substance as follows: "I _____, defendant in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by a Judge of the Court in which the said cause may be pending. I

fully understand that under the laws of this state, I have a constitutional right to a trial by jury."

*Such waiver of trial by jury must be made in open court* after the defendant has been arraigned and has had opportunity to consult with counsel. Such waiver may be withdrawn by the defendant at any time before the commencement of the trial.

(Emphasis added.)

{¶9} "Therefore, to be valid, a [jury trial] waiver must meet five conditions. It must be (1) in writing, (2) signed by the defendant, (3) filed, (4) made part of the record, and (5) made in open court." *State v. Lomax*, 114 Ohio St.3d 350, 2007-Ohio-4277, ¶ 9; *State v. Reynolds*, 12th Dist Warren No. CA2019-08-077, 2020-Ohio-4354, ¶ 8. The Ohio Supreme Court further clarified:

> a trial court does not need to engage in an extended colloquy with the defendant in order to comply with the statutory requirement that a jury waiver be made in open court. There must be, however, some evidence in the record of the proceedings that the defendant acknowledged the waiver to the trial court while in the presence of counsel, if any. Absent such evidence, the waiver does not comply with the requirements of R.C. 2945.05 and is therefore invalid.

*Lomax* at ¶ 42.

{¶10} The "in open court" requirement is satisfied when the trial court inquires whether the defendant has voluntarily signed a jury trial waiver. *Id.* "Absent strict compliance with the requirements of R.C. 2945.05, a trial court lacks jurisdiction to try the defendant without a jury." *State v. Pless*, 74 Ohio St.3d 333 (1996), paragraph one of the syllabus.

{¶11} The record demonstrates that the trial court's brief reference to the jury trial waiver at the commencement of trial did not satisfy the requirement of R.C. 2945.05 that VonStein acknowledge his waiver in open court. *See Reynolds*, 2020-Ohio-4354 at ¶ 14.[1]

---

1. Although not argued by VonStein on appeal, we note that he did not sign the jury waiver form.

Because VonStein's waiver was not made in open court, the trial court lacked jurisdiction to conduct a bench trial. *Reynolds* at ¶ 15. *Accord Pless* at 339 ("Absent strict compliance with the requirements of R.C. 2945.05, a trial court lacks jurisdiction to try the defendant without a jury"). We therefore sustain VonStein's first assignment of error, reverse his conviction for aggravated menacing, and remand the case for further proceedings.

{¶12} Assignment of Error No. 2:

{¶13} THERE WAS INSUFFICIENT EVIDENCE TO CONVICT FOR AGGRAVATED MENACING UNDER R.C. 2903.21(A).

{¶14} Assignment of Error No. 3:

{¶15} THE TRIAL COURT ERRED BY CONVICTING THE DEFENDANT OF AGGRAVATED MENACING WHEN THE RECORD SUPPORTED A MENACING CONVICTION.

{¶16} Given our disposition of VonStein's first assignment of error, and in accordance with App.R. 12(A)(1)(c), we find his second and third assignments of error are moot and need not be addressed.

{¶17} Judgment reversed and remanded.


M. POWELL, J., concurs.

PIPER, P.J., concurs separately.


**PIPER, P.J., concurring separately.**

{¶18} In concurring with the foregoing opinion, I write briefly to say that had it not been for our resolution of the first assignment of error, I would have sustained VonStein's second assignment of error.

{¶19} Over a period of years, VonStein and Brandenburg had ongoing disputes and

- 4 -

various disagreements.  Brandenburg considered VonStein as a "thorn in his side" and "like a used car salesman he smiles at everybody and then will stab you when you're not looking."

{¶20}  Dramatic, exaggerated statements are often not meant to be taken literally but rather to make a point.  Of course, Brandenburg does not really believe car salesmen go around killing people by stabbing them in the back.  While disrespectful to salesmen, Brandenburg was trying to get the point across that he considered Vonstein to be distrustful.  Being a thorn in the side, or distrustful, is not supportive of a realistic belief of life-threatening harm.  Despite the verbal abuse the two may have exchanged in the past, there is no evidence of physical contact, let alone that either would cause the other "serious" physical harm.  After years of displeasure with one another, each seemed to know their limits.  One of Brandenburg's witnesses posited that VonStein was possibly in the vicinity but did not personally get involved in the incident at hand and instead, sent an employee over "probably to keep him (VonStein) from doing something rash."  This suggests even Brandenburg's employee believed VonStein, despite being "mad," wouldn't expose himself to the possibility of a personal confrontation.

{¶21}  There is little doubt that Brandenburg's flooding water onto VonStein's property would rile VonStein.  Similarly, there is little doubt VonStein's verbiage would let Brandenburg know how upset and angry VonStein was about the water drainage continuing onto his property.  No one who saw and heard the exchange testified Brandenburg showed signs of fear or serious distress indicative of a sincere concern for serious physical harm at the hands of VonStein.  There is nothing in the record describing trembling, a quivering voice, actions to seek shelter, or conduct indicative of a fear involving serious physical harm.  Absent are any excited utterances that confirm the sincerity of Brandenburg's depth of concern for serious physical harm.  To the contrary, testimony suggests that those listening

to Vonstein over the phone, were actually laughing and grinning – VonStein was "mad." Every adult knows words spoken when "mad" are intensified and not fully meant. Common knowledge tells us that in anger lies the absence of deliberation and reflection.

{¶22} Brandenburg's exaggerated statement that car salesmen go around stabbing people when they are not looking was intended to make a point; Vonstein's exaggeration was intended "to get him (Brandenburg) to stop" the flooding of his property.[2] Lacking is any credible evidence that this telephone exchange, or future disagreements, would lead to physical harm, much less serious physical harm.

{¶23} The very definition of "hyperbole" is that exaggerated statements are not meant to be taken literally. Regardless of how cartoonish one's imagination might be, VonStein's words were incapable of being carried out literally. Such an act is inconsistent with factual possibility. Additional hyperbole, incapable of performance, was Vonstein's statement that he would "sue his (Brandenburg's) ass off." Yet, a statement to sue *does* demonstrate an intention to resort to the legal system, not violence.

{¶24} Brandenburg refers to VonStein as a "bully." However, bullies tend to intimidate, humiliate, or embarrass others, rarely engaging in serious physical harm. Rather it is clear VonStein's dramatic words of anger comprised an attempt to inhibit Brandenburg to discontinue the potential contamination of VonStein's ground water which feeds his pond. However, this does not support a credible belief that VonStein was telegraphing a future intention to cause Brandenburg "serious" physical harm. This is particularly true where VonStein knew there were witnesses and the call was being recorded. While it appears the two may have taunted and possibly aggravated one another for years, the record establishes they have never been physical – not even the slightest scuffle or shove. A

_____

2. The record supports that the flooding of Vonstein's property had been ongoing and that there was a concern for the flooding contaminating a pond on Vonstein's property.

genuine and sincere belief a heinous, and obscene injury was a realistic possibility appears preposterous and the stated belief by Brandenburg that VonStein had the physical capability to take lungs out via the throat is unconvincing.

{¶25} Among other factors, judging credibility involves accessing motive, physical possibility, the reasonableness of explanations and attendant details, the context of circumstances, the possibility of corroboration or supporting circumstantial evidence, and in general the believability of testimony and how that testimony was delivered. It is a difficult task to review the reasonableness of believing that serious physical harm was being threatened.

{¶26} Appellate review becomes even more difficult when appellee files no argument or brief in opposition to the appeal requesting reversal. Compounding the review even more is a record that contains the use of leading questions with suggested answers on material points, opinions tendered as conclusions unfollowed by explanations or corroboration, and testimony referencing evidence not actually produced.[3]

{¶27} If not for the trial court's lack of jurisdiction, and even considering the evidence most favorable to the non-moving party, in the absence of a reasonable belief as to the actual threat of serious physical harm, I would reverse and vacate the conviction as the Crim.R. 29 request for acquittal was proper.

---

3. For example, while portions of a recording were repeatedly referenced, the complete recording itself was never produced; additionally, the complainant testified his employee would corroborate past threats being made, but that never happened. There were no details as to the purported "threats" or the circumstances involved. Never being connected or relevant to the event in question, it appears the "threats" were offered as impermissible character evidence. As further example, the complainant upon direct examination was led to testify that Vonstein *actually said* he would kill the complainant, yet no one else testified such a statement occurred, including the responding officer, and the sole, isolated support for such a statement is found only in the answer to a leading question. The entirety of the record negates the believability of such a statement occurring – again exaggeration to make a point to convince the tribunal rather than to convey the facts.