[Cite as *State v. Roberson*, 2021-Ohio-3705.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-01-003 |
| | : | O P I N I O N |
| - vs - | | 10/18/2021 |
| | : | |
| MASON D. ROBERSON, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 20CR37166

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Thomas G. Eagle Co., L.P.A., and Thomas G. Eagle, for appellant.

**HENDRICKSON, J.**

{¶1} Appellant, Mason D. Roberson, appeals from his conviction and sentence in the Warren County Court of Common Pleas for aggravated robbery with a firearm specification. For the reasons discussed below, we affirm in part, reverse in part, and remand for the limited purpose of resentencing in compliance with R.C. 2929.19(B)(2)(c).

{¶2} On September 21, 2020, appellant was indicted on one count of aggravated

robbery in violation of R.C. 2911.01(A)(1), a felony of the first degree, and one count of robbery in violation of R.C. 2911.02(A)(2), a felony of the second degree. Both counts were accompanied by a firearm specification as set forth in R.C. 2941.145(A). The charges arose out of allegations that on May 30, 2020, appellant, accompanied by two associates, robbed the Days Inn Hotel in Middletown, Warren County, Ohio at gunpoint, stealing $160 from the hotel's cash register.

{¶3} Appellant pled not guilty to the charges and waived his right to a jury trial. On November 23, 2020, a bench trial commenced, at which time the state presented testimony from various law enforcement officers who participated in the investigation and from Mukund Patel, the front desk clerk working at Days Inn at the time of the robbery. Appellant did not testify or present any witnesses on his behalf. Security camera footage of the robbery was admitted into evidence. The testimony and exhibits introduced at trial established the following facts.

{¶4} At 10:28 a.m. on May 30, 2020, three men entered the Middletown Days Inn and robbed the hotel at gunpoint. The three men wore masks, although the mask of the first robber ("Male #1") slipped down at one point, making his face visible to the hotel's security system. Male #1 leapt over the front desk and entered the back office carrying what appeared to be an AR-15 assault rifle in his left hand. A second man ("Male #2") took a handgun from the third man ("Male #3") and followed Male #1 into the back office. Once Male #2 joined Male #1 in the back office, they swapped guns, with Male #1 again holding the weapon in his left hand. While Male #1 and Male #2 demanded money from Patel, Male #3 acted as a lookout in the hotel lobby.

{¶5} Patel informed the robbers that he did not have access to the safe but could open the hotel's cash register. Patel opened the cash register and Male #1 took out $160. The three robbers then fled the hotel, exiting out the front door. Patel called 9-1-1 to report

the incident, and officers from the Middletown Police Department responded to the scene.

{¶6} The police were unable to locate the perpetrators in the immediate aftermath of the robbery. Patel was unable to identify the robbers, as he had been focused on the guns pointed at him rather than the perpetrators' faces. Detective Kristi Hughes reviewed the security camera footage and still photographs produced from the video footage. She noted that Male #1's facial covering had fallen during the robbery, permitting a clear, unobstructed view of his face. The security footage depicted Male #1 as a thin, light-skinned black man, about 6'2" to 6'3" tall, with light facial hair around his lip, chin, and jaw, and a dimple in his chin. The security footage also depicted Male #1 as having a tattoo on his right arm, a small portion of which was visible around his wrist, where his shirtsleeve had ridden up. From the way Male #1 had handled the handgun and AR-15, he was believed to be left-handed. Male #2 was a darker-skinned black man. Male #3 appeared to be hiding an Afro under his head covering. All three men appeared to be in their twenties.

{¶7} In an effort to develop leads, Detective Hughes posted the surveillance footage from the robbery on the Middletown Police Department's Facebook page. Although tips of possible suspects were provided by the public, the named suspects were excluded as they did not match the description of the men who robbed the hotel. Detective Hughes' investigation had started to stall out when, on August 4, 2020, she received a telephone call from Detective Ruwe of the Delhi Township Police Department. Delhi Township, in conjunction with the Amberly Village Police Department and the Wyoming Police Department, had been investigating a series of vehicle thefts. Pursuant to this investigation, one of the stolen vehicles, a Dodge Journey, was found in the driveway of an apartment building located at 7810 Dawn Road, Cincinnati, Ohio. Another stolen vehicle, an Acura RDX, was seen driving away from the 7810 Dawn Road apartment building. Officers who stopped the Acura were informed by the occupants that they had spent the night at 7810

Dawn Road, Apt. 2 (hereafter, the "Dawn Road apartment"), with Kamico Evans, Matthew Lyons, and appellant. The Dawn Road apartment was leased to appellant and Jamanuel Wright.

{¶8} The officers investigating the vehicle thefts executed a search warrant of the Dawn Road apartment on August 4, 2020. During the search, officers found three magazines to an AR-15 assault rifle in one of the bedrooms. The magazines were consistent with an AR-15 assault rifle, like the one used in the armed robbery of the Days Inn. Inside the stolen Dodge Journey that had been located in the driveway of the residence, officers found a .9 mm Taurus handgun. The handgun was the same style, size, and color as the handgun used in the Days Inn robbery. The DNA of appellant's roommate was found on the gun.

{¶9} While the search warrant was being executed, appellant, Evans, and Wright arrived on scene. All three men were taken into custody and transported to the Amberly Village Police Department. Detective James Drake spent between three-and-one-half hours to four hours with appellant at the police station. Detective Drake noted that appellant physically matched the description of Male #1 from the Days Inn robbery, as appellant was about 6'2" or 6'3" tall and was "thin and looked pretty athletic." Detective Drake also noted that appellant had a tattoo on his wrist and arm that was similar to Male #1. Detective Drake observed that when appellant signed his *Miranda* rights form and a waiver form for DNA collection, appellant signed with his left hand. Based on his review of the security footage of the robbery and his observations and interactions with appellant, Detective Drake believed appellant was Male #1.

{¶10} Police recovered communications between Evans and appellant and Evans and Wright from their respective cell phones. After the stolen Dodge Journey had been recovered, Wright had texted Evans, "Bruh my gun in dat bitch." Wright further texted, "This

don't make sense like they woulda been tracked it I swear one of da neighbors is snitching." Videos on Evans' phone depicted Evans and Lyons in possession of an AR-15 assault rifle and a black handgun on June 19 and June 26, 2020. Appellant and Lyons were also together in a video recorded on June 26, 2020. The video showed the tattoo on appellant's right forearm and wrist, which appeared similar to the tattoo on Male #1's arm. Evans' phone's GPS location data placed him in Middletown, about one to two miles away from the Days Inn, approximately three hours after the robbery occurred. Also found on Evans' phone was the security footage of the Days Inn robbery, which Evans' had saved after it was posted to the Middletown Police Department's Facebook page.

{¶11} Detective Hughes attempted to interview appellant on August 7, 2020, and she spent about two hours with appellant that day. During her contact with appellant, Hughes was able to observe his height, his build, his facial features, including his facial hair and dimpled chin, and his forearm and wrist tattoo. She observed that appellant signed the *Miranda* waiver form with his left hand, indicating he was left-handed. Based on her observations, Detective Hughes believed appellant was Male #1 from the Days Inn robbery. Detective Hughes arrested appellant and transported him to the Middletown Jail. While being transported, appellant commented to Detective Hughes that "he thought that his neighbor was a snitch but he didn't want to elaborate." After appellant was booked into the Middletown Jail, he made a phone call, and Detective Hughes overheard appellant state that "he was in the Middletown jail for the robbery he did and that it was bull crap because he didn't get any money out of it."

{¶12} The trial court found appellant guilty on all offenses and firearm specifications. Appellant was subsequently sentenced on December 11, 2020. Appellant's convictions for robbery and aggravated robbery were merged as allied offenses, and the state elected to proceed on the aggravated robbery conviction. Appellant was sentenced to an indefinite

sentence of six to nine years in prison for aggravated robbery and an additional consecutive three-year prison term for the accompanying firearm specification, for an aggregate prison term of nine to twelve years.

{¶13} Appellant appealed his conviction and sentence, raising two assignments of error for review.[1]

{¶14} Assignment of Error No. 1:

{¶15} THE TRIAL COURT ERRED IN CONVICTING APPELLANT.

{¶16} In his first assignment of error, appellant raises two issues for review relating to his conviction. He first argues that the trial court "erred in convicting [him] without a jury after an invalid jury waiver" since the jury waiver form was not signed or acknowledged in open court. He then argues that his conviction for aggravated robbery is against the manifest weight of the evidence as the state failed to introduce evidence connecting him to the robbery. We begin by addressing whether there was a valid jury waiver.

**Jury Waiver**

{¶17} At a pretrial hearing held on October 29, 2020, appellant, with counsel present, indicated his desire to waive his right to a jury trial and be tried by the bench. The following discussion was then held between the court and appellant:

> THE COURT: All right. So, Mr. Roberson, in the State of Ohio, we divide the responsibility at a jury trial. I determine what the law is, and the jury determines what the facts are. The jury would have to be convinced unanimously, that means all twelve of them have to agree, beyond a reasonable doubt that you are guilty of this, in order for them to render a guilty verdict. Now, they also, all twelve have to agree that you're not guilty of this, and if they can't agree, that's what we call a mistrial. That doesn't mean that you win by forfeit. It just means that there is no verdict for that particular trial.

---

1. We note with disapproval appellant's shotgun approach of raising several issues that require different legal analyses under each assignment of error, instead of properly raising each specific issue in separate assignments of error. *See* Loc.R. 11(B)(3); *State v. Cook*, 12th Dist. Warren No. CA2020-08-053, 2021-Ohio-2157, ¶ 15, fn. 1; *State v. Harner*, 12th Dist. Brown No. CA2019-10-012, 2020-Ohio-3071, ¶ 6, fn. 2.

If you waive your right to a jury, then we combine those two tasks and I will determine the facts in the case and the law. You retain all the other rights that you have. You still have the right to confront witnesses, the right to compel witnesses to testify on your own behalf, the right to remain silent, proof beyond a reasonable doubt. All of those things remain the same, except I will determine whether or not the State of Ohio has proven that you are guilty of this, beyond a reasonable doubt. Do you understand all of this?

[APPELLANT]: Yes.

THE COURT: Have you had the opportunity to talk about it with your lawyer?

[APPELLANT]: Yes.

THE COURT: Are you satisfied with the representation you've received so far?

[APPELLANT]: Yes.

THE COURT: All right, and you want to waive your right to a jury?

[APPELLANT]: Yes.

THE COURT: All right. There is a written document that tells me in writing, that you want to waive your right to a jury. * * *

A signed written jury waiver was filed that same day with the trial court.

{¶18} Appellant contends that despite the foregoing discussion and a signed jury waiver form filed with the court, his jury waiver was not valid because the jury waiver form was not signed or acknowledged in open court. Appellant contends that absent an acknowledgement on the record that he personally signed the jury waiver form, the requirements of R.C. 2945.05 were not met and the trial court lacked jurisdiction to conduct a bench trial.

{¶19} The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, guarantees an accused the right to trial by

jury. *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444 (1968). Likewise, Section 5, Article I of the Ohio Constitution states that the "right of trial by jury shall be inviolate." "However, Crim.R. 23(A) allows a defendant to waive his right to a trial by jury in serious offense cases provided that the waiver is made knowingly, intelligently, and voluntarily, and in writing." *State v. Lomax*, 114 Ohio St.3d 350, 2007-Ohio-4277, ¶ 6. The manner in which a defendant may waive his right to a jury trial is set forth in R.C. 2945.05. This provision states:

> In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof. It shall be entitled in the court and cause, and in substance as follows: "I _____, defendant in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by a Judge of the Court in which the said cause may be pending. I fully understand that under the laws of this state, I have a constitutional right to a trial by jury."
>
> *Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel.* Such waiver may be withdrawn by the defendant at any time before the commencement of the trial.

(Emphasis added.) "Absent strict compliance with the requirements of R.C. 2945.05, a trial court lacks jurisdiction to try the defendant without a jury." *State v. Pless*, 74 Ohio St.3d 333 (1996), paragraph one of the syllabus.

{¶20} "Therefore, to be valid, a waiver must meet five conditions. It must be (1) in writing, (2) signed by the defendant, (3) filed, (4) made part of the record, and (5) made in open court." *Lomax* at ¶ 9.

{¶21} In *Lomax*, the Ohio Supreme Court construed the "made in open court" language to determine what R.C. 2945.05 required in order for a jury waiver to be valid. There, the defendant signed a written waiver, which was filed on the first day of trial and

made part of the record. *Id.* at ¶ 10. The trial court mentioned the jury waiver only in passing, stating, "Since there's going to be a jury waiver, does the State care to make an opening statement at this time?" *Id.* at ¶ 45. Thereafter, a bench trial ensued, at which time the defendant was found guilty of murder. *Id.* at ¶ 2. The court of appeals reversed the conviction, finding that the mere mention on the record of a jury waiver did not comply with the "open court" requirement of R.C. 2945.05. *Id.* at ¶ 4.

{¶22} On appeal, the supreme court affirmed, agreeing that the "open court" requirement had not been met under the facts of the case. The court found that while "a trial court does not need to engage in an extended colloquy with the defendant in order to comply with the statutory requirement that a jury waiver be made in open court," there nonetheless had to be "some evidence in the record of the proceedings that the defendant acknowledged the waiver to the trial court while in the presence of counsel, if any." *Id.* at ¶ 42. "We do not mandate magic words, or a prolonged colloquy, but simply what Ohio law intends – that a defendant while in the courtroom and in the presence of counsel, if any, acknowledge to the trial court that the defendant wishes to waive the right to a jury trial." *Id.* at ¶ 48. The court went on to summarize its holdings, stating:

> We therefore hold that a waiver of the right to a jury trial must not only be made in writing, signed by the defendant, and filed as part of the record, but must also be made in open court. To satisfy the "in open court" requirement in R.C. 2945.05, there must be some evidence in the record that the defendant while in the courtroom and in the presence of counsel, if any, acknowledged the jury waiver to the trial court.

*Id.* at ¶ 49.

{¶23} The supreme court has found that the "in open court" requirement is satisfied when the trial court inquires whether the defendant has voluntarily signed a jury trial waiver. *Id.* at ¶ 42, citing *State v. Jells*, 53 Ohio St.3d 22 (1990) and *State v. Bays*, 87 Ohio St.3d 15 (1999). However, this is not the only way the "in open court" requirement can be met.

- 9 -

While it might be the better practice for the court to question the defendant as to whether he has voluntarily signed the jury waiver form while on the record, the requirements of R.C. 2945.05 can still be met absent this procedure. *See State v. Thomas*, 8th Dist. Cuyahoga No. 82130, 2003-Ohio-6157, ¶ 14-16. An oral acknowledgement by the accused, in open court, that he wishes to waive the right to a jury trial, in combination with a written, signed waiver form that is filed with the court and made part of the record also meets the requirements of R.C. 2945.05. *See id.* at ¶ 14-15 (finding the requirements of R.C. 2945.05 were met where the defendant, following a colloquy, affirmatively indicated on the record that he wished to waive his right to a jury trial prior to signing a written waiver form during a court recess and the waiver form was filed with the court); *State v. Reynolds*, 12th Dist. Warren No. CA2019-08-077, 2020-Ohio-4354, ¶ 9 (noting that a "passing reference" to a signed waiver does not satisfy the "in open court" requirement but the requirement is met where a defendant "orally acknowledge[s] in the courtroom and in the presence of counsel that he or she is waiving the right to a jury trial"); *State v. Banks*, 10th Dist. Franklin No. 18AP-808, 2019-Ohio-5440, ¶ 25 (noting that in addition to a filed and recorded signed jury waiver, "there must be an oral acknowledgement by the accused, in open court, that he or she wishes to waive the right to a jury trial in order to comply with the requirements of R.C. 2945.05 and for the jury waiver to be valid").

{¶24} In the present case, the trial court engaged in a colloquy with appellant, wherein the court explained to appellant his constitutional right to a jury trial and questioned appellant about his desire to waive such right. The court inquired whether appellant had discussed waiving a jury trial with his attorney. Appellant indicated that he had discussed the issue with his counsel, that he was satisfied with counsel's representation, and that he wanted to waive his right to a jury. Additionally, the record reveals that a signed jury waiver was filed with the court that same day. Contrary to appellant's assertions, "[t]he written

- 10 -

waiver need not be actually signed in open court 'as long as the signed writing has been made part of the record and the waiver is reaffirmed in open court.'" *State v. Allen*, 12th Dist. Fayette No. CA97-02-004, 1997 Ohio App. LEXIS 4522, * 7 (Oct. 6, 1997), quoting *State v. Walker*, 90 Ohio App.3d 352, 358 (3d Dist.1993).

{¶25} Appellant suggests that the signature on the waiver form may not be his – contending there is no record of who actually signed the document. However, neither appellant nor trial counsel objected to the commencement of trial after the signed form was filed or asserted at trial that appellant had not signed the form. In light of the facts presented in the present case, we find that the requirements of R.C. 2945.05 were met and that appellant waived his right to a jury trial. *See Thomas* at ¶ 19.

{¶26} We further find that appellant's reliance on this court's decisions in *State v. Stanton*, 12th Dist. Butler No. CA97-08-0156, 1997 Ohio App. LEXIS 5713 (Dec. 22, 1997); *State v. Reynolds,* 2020-Ohio-4354; and *State v. VonStein*, 12th Dist. Butler No. CA2020-11-111, 2021-Ohio-2984, as authority for vacating his conviction on the basis of an invalid jury waiver is misplaced. Not only is the present case factually distinguishable from the circumstances in *Stanton* – as there the defendant failed to sign a written jury waiver and there was no discussion of the defendant affirming his desire to waive a jury trial on the record after consultation with counsel – but the *Stanton* case also predated the Ohio Supreme Court's decision in *Lomax* explaining the "in open court" requirement. Additionally, in both *Reynolds* and *VonStein*, there was only a brief or passing reference made by the trial court to its receipt of a written jury waiver. *Reynolds* at ¶ 13; *VonStein* at ¶ 11. There was no evidence in the record that either defendant acknowledged their respective jury waivers to the trial court while in the presence of counsel and the courts' passing references to receiving the forms did not satisfy the requirements of R.C. 2945.05.

*Id.*; *Reynolds* at ¶ 14.[2]

{¶27}   Accordingly, for the reasons stated above, we find that the jury waiver in this case met the requirements of R.C. 2945.05 and that the trial court had jurisdiction to conduct a bench trial.  To the extent appellant's first assignment of error challenges the validity of his jury waiver, appellant's arguments are overruled.

**Manifest Weight of the Evidence**

{¶28}   Appellant also challenges his conviction for aggravated robbery, contending his conviction is against the manifest weight of the evidence.

{¶29}   A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other."  *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14.  To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66.  "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'"  *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v.*

---

2.  Appellant also cited *State v. Riggins*, 9th Dist. Summit No. 28080, 2017-Ohio-80; and *State v. Sweeting*, 1st Dist. Hamilton No. C-180161, 2019-Ohio-2360, in support of his argument that there was an invalid jury waiver.  We find these cases inapplicable and distinguishable to the facts in the case at hand.  In *Riggins*, the defendant did not sign the written jury waiver, there was no discussion of a jury waiver in open court in the defendant's presence, and there no evidence that the defendant fully understood that he had a right to a jury trial.  *Riggins* at ¶ 8.  In *Sweeting*, the defendant did not sign a jury waiver and there was no evidence that the defendant understood he had a constitutional right to a jury trial as the court did not read the full jury waiver form to the defendant and the defendant did not personally read or review the form.  *Sweeting* at ¶ 14-21.

*Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*, citing *Thompkins,* 78 Ohio St.3d at 387.

{¶30} Appellant was convicted of aggravated robbery in violation of R.C. 2911.01(A)(1), which provides that "[n]o person, in attempting or committing a theft offense, * * * or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate the offender possesses it, or use it." The sole issue in this case was the identity of appellant as Male #1 in the Days Inn robbery. Appellant contends there was no evidence connecting him to the robbery other than his "association with others who might have had knowledge of the robbery."

{¶31} "It is well settled that in order to warrant a conviction, the evidence must establish beyond a reasonable doubt the identity of the accused as the person who committed the crime at issue." *State v. Jividen*, 12th Dist. Warren No. CA2020-10-067, 2021-Ohio-2720, ¶ 11. "The identity of the accused as the perpetrator of the crime may be established by direct or circumstantial evidence." *State v. Harner*, 12th Dist. Brown No. CA2019-10-012, 2020-Ohio-3071, ¶ 13. Circumstantial and direct evidence have the same probative value. *Jividen* at ¶ 11, citing *State v. Lee*, 12th Dist. Fayette Nos. CA2020-09-014 and CA2020-09-015, 2021-Ohio-2544, ¶ 25.

{¶32} Upon review of the record, we find appellant's conviction for aggravated robbery with a firearm specification is not against the manifest weight of the evidence. Though the state's case was largely based on circumstantial evidence, the state presented ample credible evidence that appellant was Male #1 in the Days Inn robbery. Surveillance footage of the robbery provided law enforcement with a clear, unobstructed view of Male

#1's face as he entered the back office of the Days Inn hotel while holding a firearm to demand money. In addition to capturing Male #1's face, the surveillance footage captured Male #1's build, a portion of the tattoo he had on his right wrist and arm, and his use of his left hand to hold the firearms used during the robbery. After viewing the surveillance footage of the robberies, and still images of Male #1's face taken from the video footage, Detective Hughes and Detective Drake spent multiple hours in appellant's presence. They observed that appellant, like Male #1, was left-handed. Additionally, they testified that appellant's height, build, facial features, including his facial hair and dimpled chin, and his forearm and wrist tattoos matched the features and build of Male #1. Both detectives identified appellant as one of the perpetrators of the robbery.

{¶33} In addition to the detectives' identifications, corroborating evidence was found during the course of law enforcement's investigation into stolen vehicles. Inside appellant's residence, a residence where Evans and Lyons stayed, officers found three magazines to an AR-15 rifle, the same type of weapon used during the robbery. Officers also found a .9 mm handgun in one of the stolen vehicles that had been parked at appellant's apartment, and the gun was the same style, size, and color as the gun used during the robbery. Though the magazines were found in the bedroom believed to belong to Wright and the .9 mm handgun had Wright's DNA on it, the location of the weapon and magazines nonetheless demonstrated appellant's access to the weapons. Additionally, cell phone videos recovered from Evans' phone and communications between Evans and Wright indicated appellant's association with Wright, Evans, and Lyons and his access to an AR-15 assault rifle and a handgun.

{¶34} Finally, appellant's statements to Detective Hughes following his arrest for robbery provided evidence that he was a perpetrator of the Days Inn robbery. When being transported to Middletown Jail, appellant indicated he thought his neighbor had "snitch[ed]."

At the jail, he was overheard stating that he "was in the Middletown jail for the robbery he did and that it was bull crap because he didn't get any money out of it."

{¶35} Though appellant challenged the thoroughness of Detective Hughes' investigation into the robbery and questioned Detectives Hughes' and Drake's identification of him as Male #1, the greater amount of credible evidence offered at trial established beyond a reasonable doubt that appellant was a perpetrator of the robbery. The evidence presented at trial, therefore, does not weigh heavily in favor of acquittal and the trial court did not clearly lose its way and create a manifest miscarriage of justice in finding appellant guilty of aggravated robbery and the accompanying firearm specification. To the extent appellant's first assignment of error challenges his conviction for aggravated robbery and the accompanying firearm specification, we find his arguments to be without merit and they are hereby overruled.

{¶36} Assignment of Error No. 2:

{¶37} THE TRIAL COURT ERRED IN SENTENCING APPELLANT.

{¶38} In his second assignment of error, appellant raises three issues for review relating to his sentence. Appellant argues (1) the indefinite sentence imposed by the trial court pursuant to the Reagan Tokes Law is unconstitutional, (2) he received ineffective assistance of counsel as trial counsel failed to challenge the constitutionality of the Reagan Tokes Law, and (3) his sentence is contrary to law as the trial court did not provide the mandatory notices set forth in R.C. 2929.19(B)(2)(c) at the sentencing hearing when imposing the indefinite sentence.

**Constitutionality of Reagan Tokes**

{¶39} Appellant seeks to challenge the constitutionality of Ohio's indefinite sentencing structure, as set forth in R.C. 2967.271. However, it is undisputed that appellant did not raise a challenge to the constitutionality of the Reagan Tokes Law with the trial court.

As this court has repeatedly held, "arguments challenging the constitutionality of the Reagan Tokes Law are forfeited and will not be heard for the first time on appeal in cases where the appellant did not first raise the issue with the trial court." *State v. Blaylock*, 12th Dist. Butler No. CA2020-11-113, 2021-Ohio-2631, ¶ 7, citing *State v. Hodgkin*, 12th Dist. Warren No. CA2020-08-048, 2021-Ohio-1353, ¶ 11; *State v. Teasley*, 12th Dist. Butler No. CA2020-01-001, 2020-Ohio-4626, ¶ 9; and *State v. Alexander*, 12th Dist. Butler No. CA2019-12-204, 2020-Ohio-3838, ¶ 8-9.

{¶40} Given this court's precedent declining to hear any arguments challenging the constitutionality of the Reagan Tokes Law in cases where the issue was not first raised with the trial court, appellant's second assignment of error is overruled to this extent.[3]

**Ineffective Assistance**

{¶41} Appellant asserts his trial counsel was ineffective because counsel failed to challenge the constitutionality of the Reagan Tokes Law, thereby failing to preserve the issue.

{¶42} "In order to prevail on an ineffective-assistance-of-counsel claim, a defendant must prove that counsel's performance was deficient and that the defendant was prejudiced by counsel's deficient performance." *State v. Davis*, 159 Ohio St.3d 31, 2020-Ohio-309, ¶ 10, citing *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989) and *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). "Thus, the defendant must demonstrate that

---

3. We note that even if appellant had not forfeited his challenge to the constitutionality of the Reagan Tokes Law, this court has already determined that R.C. 2967.271 does not run afoul of an offender's due process rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution. *State v. Jackson*, 12th Dist. Butler No. CA2020-07-077, 2021-Ohio-778, ¶ 15; *State v. Morris*, 12th Dist. Butler No. CA2019-12-205, 2020-Ohio-4103, ¶ 10; *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837, ¶ 17. This court has also determined that the Reagan Tokes Law does not violate the separation-of-powers doctrine. *State v. Suder*, 12th Dist. Clermont Nos. CA2020-06-034 and CA2020-06-035, 2021-Ohio-465, ¶ 25. The same is true as it relates to a challenge alleging the Reagan Tokes Law impinges on an offender's constitutional right to a jury. *State v. Rogers*, 12th Dist. Butler No. CA2021-02-010, 2021-Ohio-3282, ¶ 20.

counsel's performance fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Id.*, citing *Bradley* at paragraphs two and three of the syllabus. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Bradley* at 142, quoting *Strickland* at 694. The failure to satisfy either the deficiency prong or the prejudice prong of the test is fatal to a claim of ineffective assistance of counsel. *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000).

{¶43} We find that trial counsel was not ineffective for failing to challenge the constitutionality of the Reagan Tokes Law. It is well established that statutes are presumed constitutional. *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, ¶ 17; *State v. Cook*, 83 Ohio St.3d 404, 409 (1998). At the time appellant was sentenced on December 11, 2020, no appellate court had found the Reagan Tokes Law unconstitutional.[4] Precedents from this court – all of which were decided before appellant was sentenced – had already determined that the Reagan Tokes Law was not unconstitutional as it does not violate an offender's right to due process. *See State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837; *State v. Morris*, 12th Dist. Butler No. CA2019-12-205, 2020-Ohio-4103. Case law from other appellate courts decided before appellant's sentencing had likewise found the Reagan Tokes Law constitutional or not yet ripe for review. *See State v. Ferguson*, 2d Dist. Montgomery No. 28644, 2020-Ohio-4153 (does not violate an offender's

---

4. The first appellate decision finding the Reagan Tokes Law unconstitutional was not decided until May 27, 2021 – more than five months after appellant was sentenced. *See State v. Delvallie*, Cuyahoga No. 109315, 2021-Ohio-1809. The Eighth District recognized that its decision in *Delvallie* was in conflict with prior decisions from its court finding Reagan Tokes constitutional. *See State v. Simmons*, 8th Dist. Cuyahoga No. 109476, 2021-Ohio-939; *State v. Wilburn*, 8th Dist. Cuyahoga No. 109507, 2021-Ohio-578; *State v. Gamble*, 8th Dist. Cuyahoga No. 109613, 2021-Ohio-810. As a result, the Eighth District sua sponte determined it would "consider this matter en banc with respect to the issue of whether the Reagan Tokes Law (SB 201) is unconstitutional under any of the following provisions: the Due Process Clause, the Sixth Amendment right to trial by jury, and the Separations-of-Powers Doctrine." *State v. Delvallie*, 8th Dist. Cuyahoga No. 109315 (En Ban Journal Entry) (June 3, 2021). An en banc determination has not yet been issued and the constitutionality of the Reagan Tokes Law remains unresolved in the Eighth District.

due process rights or the separation of powers doctrine); *State v. Hacker*, 3d Dist. Logan No. 8-20-01, 2020-Ohio-5408 (does not violate an offender's due process rights or the separation of powers doctrine); *State v. Wolfe*, 5th Dist. Licking No. 2020CA00021, 2020-Ohio-5501 (not yet ripe for review); *State v. Velliquette*, 6th Dist. Lucas No. L-19-1232, 2020-Ohio-4855 (not yet ripe for review). We conclude that counsel was not deficient for not challenging the constitutionality of a statute that was presumed constitutional and had previously been found constitutional by the appellate courts that had reached the merits of the issue. *See Hodgkin*, 2021-Ohio-1353 at ¶ 17-18; *State v. Ferguson*, 11th Dist. Lake No. 2020-L-031, 2020-Ohio-5578, ¶ 32. *See also State v. McNeill*, 83 Ohio St.3d 438,449 (1998) ("It is not ineffective assistance for a trial lawyer to maneuver within the existing law, declining to present untested or rejected legal theories").[5]

{¶44} Therefore, to the extent appellant's second assignment of error asserts he received ineffective representation by trial counsel, his argument is overruled.

### R.C. 2929.19(B)(2)(c) Notifications

{¶45} Appellant argues the trial court erred during sentencing when it failed to comply with R.C. 2929.19(B)(2)(c) by imposing the aggregate indefinite prison term of nine to twelve years and neglected to provide the required statutory notifications at the sentencing hearing.

{¶46} R.C. 2929.19(B)(2)(c) provides that "if the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court *shall do all of the following*:

---

5. Appellant's reliance on *State v. Maxcy-Tipton*, 6th Dist. Wood No. WD-19-093, 2020-Ohio-6983, is misplaced. In *Maxcy-Tipton*, the Sixth District Court of Appeals found trial counsel provided ineffective representation for not challenging the constitutionality of R.C. 2909.15, Ohio's arson offender registry. *Id.* at ¶ 9. However, in that case, at the time of sentencing, "the conflicting holdings in * * * two appellate districts [regarding the constitutionality of the statute] was apparent from a cursory review of the annotated statute." *Id.* Unlike in *Maxcy-Tipton*, at the time appellant was sentenced, there were no conflicting decisions amongst the appellate courts regarding the constitutionality of the Reagan Tokes Law.

(c) If the prison term is a non-life felony indefinite prison term, *notify the offender of all of the following*:

(i) That it is rebuttably presumed that the offender will be released from service of the sentence on the expiration of the minimum prison term imposed as part of the sentence or on the offender's presumptive earned early release date, as defined in section 2967.271 of the Revised Code, whichever is earlier;

(ii) That the department of rehabilitation and correction may rebut the presumption described in division (B)(2)(c)(i) of this section if, at a hearing held under section 2967.271 of the Revised Code, the department makes specified determinations regarding the offender's conduct while confined, the offender's rehabilitation, the offender's threat to society, the offender's restrictive housing, if any, while confined, and the offender's security classification;

(iii) That if, as described in division (B)(2)(c)(ii) of this section, the department at the hearing makes the specified determinations and rebuts the presumption, the department may maintain the offender's incarceration after the expiration of that minimum term or after that presumptive earned early release date for the length of time the department determines to be reasonable, subject to the limitation specified in section 2967.271 of the Revised Code;

(iv) That the department may make the specified determinations and maintain the offender's incarceration under the provisions described in divisions (B)(2)(c)(i) and (ii) of this section more than one time, subject to the limitation specified in section 2967.271 of the Revised Code;

(v) That if the offender has not been released prior to the expiration of the offender's maximum prison term imposed as part of the sentence, the offender must be released upon the expiration of that term.

(Emphasis added.)

{¶47} By indicating that the sentencing court "shall do all of the following" and "notify the offender of all of the following," the legislature clearly placed a mandatory duty upon the trial court to inform the defendant of all five relevant notifications. "Thus, when sentencing an offender to a non-life felony indefinite prison term under the Reagan Tokes Law, a trial court must advise the offender of the five notifications set forth in R.C. 2929.19(B)(2)(c) at

- 19 -

the sentencing hearing to fulfill the requirements of the statute." *State v. Hodgkin*, 2021-Ohio-1353 at ¶ 24. The failure to advise the defendant of any of the five notifications constitutes error and a remand for the limited purpose of permitting the sentencing court to provide the mandatory notifications required by R.C. 2929.19(B)(2)(c) is necessary. *State v. Paul*, 12th Dist. Clinton No. CA2020-08-010, 2021-Ohio-1628, ¶ 22-23 (finding reversible error where three of the notifications listed in R.C. 2929.19[B][2][c] were omitted by the trial court and remanding for the "sole and limited purpose of providing the mandatory notifications" required by the statute).

{¶48} "While the trial court is not required to recite the statutory language verbatim in providing the notifications to the defendant at sentencing, the record must nonetheless reflect that each of the necessary notifications were provided." *State v. Suber Brown*, 12th Dist. Butler No. CA2020-09-099, 2021-Ohio-2291, ¶ 17. After reviewing the record, we find that the trial court failed to advise appellant of all of the required notifications set forth in R.C. 2929.19(B)(2)(c). Although the trial court discussed the presumption of release upon the completion of appellant's nine-year minimum term and noted that the DRC could rebut that presumption and hold appellant "up to the maximum term," the court failed to advise appellant that (1) the DRC must hold a hearing to rebut the presumption that he would be released after serving a minimum nine-year term; (2) the DRC may make specified determinations regarding his conduct while confined, his rehabilitation, his threat to society, his restrictive housing, if any, while confined, and his security classification in rebutting the presumption; (3) the DRC can maintain appellant's incarceration after the expiration of the minimum term for the length the DRC determines is reasonable, subject to his maximum penalty of 12 years; and (4) the DRC could maintain appellant's incarceration more than one time.

{¶49} Given the foregoing omissions in the trial court's notification when imposing

the indefinite sentence, we sustain appellant's second assignment of error to the extent it challenges the trial court's failure to comply with R.C. 2929.19(B)(2)(c). Appellant's sentence is reversed and this matter remanded for the sole purpose of resentencing appellant in accordance with the requirements set forth in R.C. 2929.19(B)(2)(c). *See, e.g., Brown Suber* at ¶ 17-18; *Paul* at ¶ 22-23; *Hodgkin* at ¶ 25. However, we emphasize that our reversal and remand are only for the purpose of complying with the foregoing statute and in no way affects the validity of the underlying conviction or any other aspect of the sentence imposed by the trial court. In other words, appellant is not entitled to be sentenced anew and the matter is remanded to the trial court for the sole and limited purpose of providing the mandatory notifications of R.C. 2929.19(B)(2)(c).

{¶50} Judgment affirmed in part, reversed in part, and remanded for the sole purpose of resentencing so that appellant's sentence complies with R.C. 2929.19(B)(2)(c).

M. POWELL, P.J., and S. POWELL, J., concur.