[Cite as *State v. Lee*, 2022-Ohio-248.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-05-047 |
| | : | O P I N I O N |
| - vs - | | 1/31/2022 |
| | : | |
| ELWOOD LEE, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 20CR37467

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Engel & Martin, LLC, and Mary K. Martin, for appellant.


**HENDRICKSON, J.**

{¶1} Appellant, Elwood Lee, appeals from his conviction and sentence in the Warren County Court of Common Pleas for felonious assault and assault. For the reasons set forth below, we affirm in part, reverse in part, and remand the matter for the limited purpose of resentencing for compliance with R.C. 2929.19(B)(2)(c).

{¶2} On November 23, 2020, appellant, an inmate at the Lebanon Correctional

Institute (LCI), was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree, one count of assault in violation of R.C. 2903.13(A), a felony of the third degree, and one count of harassment with a bodily substance in violation of R.C. 2921.38(A), a felony of the fifth degree. With respect to the assault charge, the indictment specified that offense occurred on the grounds of a state correctional institution, was committed by a person incarcerated in the institution, and the victim was an employee of the department of rehabilitation and correction. The charges arose out of allegations that appellant assaulted two corrections officers on May 14, 2020. The first assault, involving Corrections Officer (C.O.) Aaron Becker, occurred in appellant's cell at LCI. The second assault, involving Lieutenant Nicolas Kruger, occurred in the prison's infirmary.

{¶3} Appellant pled not guilty to the charges. He waived his right to a jury trial, and a bench trial commenced on May 3, 2021. At trial, the judge was presented with conflicting versions of events. C.O. Becker testified that on May 14, 2000, he was working in the H-block at LCI looking for out-of-place inmates. Upon arriving at cell 36 in the H-block, he discovered an inmate who should have not been there. Though appellant and another inmate, Stoleznberg, were assigned to the cell, C.O. Becker found inmate Fench hiding under the bottom bunkbed. At the time Fench was found, appellant was in the cell, preparing food while he sat on the bottom bunk.

{¶4} C.O. Becker directed Fench to exit the cell and stand along the wall. Appellant was told to remain in the cell and C.O. Becker would be back to talk to him after surveillance footage could be reviewed to see if any illicit activity had occurred in the cell or if there had been other unauthorized inmates in the cell. C.O. Becker attempted to close the door to cell 36, but appellant became "verbally aggressive [and] argumentative." Appellant told C.O. Becker, "You're not shutting this fucking door" and he put his foot and hand on the

- 2 -

door. C.O. Becker attempted to de-escalate the situation by explaining to appellant what he was going to do to investigate Fench's presence in the cell and what would happen if everything checked out. However, when appellant would not cooperate by voluntarily removing his hand from the door, C.O. Becker guided appellant's arm away. Appellant aggressively shoved C.O. Becker's hand away and put his own hand back up on the cell door. When C.O. Becker tried to again guide appellant's arm away from the door, appellant violently shoved the correction officer's arm and stated, "You're done bitch." Appellant then moved to pick up a large, metal locker box that was kept in the cell in order to throw it at C.O. Becker. C.O. Becker, in fear for his safety, radioed for assistance and deployed a burst of pepper spray at appellant's face. C.O. Becker also instructed appellant to get on the ground, but appellant ignored the officer's commands.

{¶5} Appellant put his hands up towards his face and C.O. Becker attempted to secure appellant in hand restraints. However, appellant dropped his hands in a fighting stance and punched C.O. Becker in the forehead with a closed fist. The punch caused a laceration to C.O. Becker's forehead and blood began to fall into his eyes. C.O. Becker tried to protect himself from appellant by delivering closed fist strikes to appellant's upper torso and head. Appellant was able to push C.O. Becker violently against the cell wall and he punched the corrections officer two more times in the face, near C.O. Becker's eyes and nose. Appellant then ran out of his cell, where he was intercepted by additional corrections officers.

{¶6} C.O. Becker testified that he was disoriented from the blows to his head. He obtained medical care for his treatment. In addition to sustaining a scar as a result of the forehead laceration, he also suffered a concussion, a fractured nasal cavity, and a fractured right orbital bone. C.O. Becker was in constant, excruciating pain from his injuries, which took months to fully heal. He experienced persistent headaches, nausea, sensitivity to light,

and forgetfulness and was off work for five months. Photographs of C.O. Becker's injuries and medical records related to the treatment of his injuries were admitted into evidence.

{¶7} Lt. Kugel testified that after appellant assaulted C.O. Becker, appellant was secured and transported to the infirmary. Appellant had blood on his face, but Lt. Kugel was not sure whether it was appellant's or C.O. Becker's blood. During the walk to the infirmary, appellant was "hooting and hollering" and yelling incoherently.

{¶8} At the infirmary, Lt Kugel told appellant, who was handcuffed with his hands behind his back, to have a seat on the medical bed. Although appellant walked towards the bed, he ignored repeated directives to sit on the bed. Lt. Kugel pulled out his pepper spray and issued a final commend for appellant to sit on the bed. At this time, appellant charged at Lt. Kugel, dropping his shoulder into Lt. Kugel's midsection. Lt. Kugel was able to take control of appellant and place him on the ground. However, while on the ground, appellant was noncompliant. Appellant, while "flailing his legs, kicking, screaming, and hollering," attempted to spit saliva and blood at Lt. Kugel. Lt Kugel pushed appellant's face away with his hand, which caused the spit and saliva to land on the floor rather than on Lt. Kugel's person.

{¶9} During Lt. Kugel's struggle with appellant, another officer, Lieutenant Mathew Patrick, entered the room and deployed his pepper spray at appellant. Lt. Patrick was able to place appellant in a spit hood, though appellant continued to try to spit on the corrections officers. The officers were able to stand appellant up, despite appellant continuing to struggle by flailing and kicking his legs. The officers sat appellant on the medical bed and placed him in additional restraints to secure his arms and legs. After about fifteen minutes, appellant calmed down and was then escorted to restrictive housing in the prison.

{¶10} Appellant testified and provided a different version of events. Appellant acknowledged that at the time the incidents occurred, he was serving a prison sentence at

LCI following a robbery conviction. Appellant admitted Fench had been in his cell during C.O. Becker's check of the cell on May 14, 2020. He further admitted that he grabbed the cell door and prevented C.O. Becker from closing the door. However, he denied that he put his foot against the door, cussed at C.O. Becker, picked up the locker box to throw it at the officer, or intentionally struck C.O. Becker. Appellant's testimony painted C.O. Becker as the aggressor. Appellant claimed C.O. Becker sprayed him with pepper spray and assaulted him because the officer became embarrassed when appellant laughed at the officer for mistakenly pressing the "man down" button on his radio. He claimed the injuries C.O. Becker sustained occurred when he blindly flailed his arms to try to get C.O. Becker off of him so that he could run out of the cell. As support for his version of events, appellant relied on a photograph of his cell that had been taken after the altercation, which he claimed demonstrated the locker box had not been thrown or touched during the incident since there were items on top of the box that had not been disturbed.

{¶11} Appellant also provided a different version of the events that occurred in the infirmary. Appellant denied struggling with or attempting to spit on Lt. Kugel. He claimed that upon entering the infirmary, he complied with directives to get on the medical bed. He testified he was then placed in leg cuffs as additional officers came into the room. According to appellant, one of those officer's, Lt. Patrick, punched him in the face even though he was not provoked. The other officers who had gathered then began striking and choking him.

{¶12} The state called Lt. Patrick as a rebuttal witness. Lt. Patrick testified that when he entered the infirmary, he found appellant and Lt. Kugel on the ground. Lt. Patrick testified appellant was eventually secured and moved to the medical bed. He denied that he or other officers assaulted appellant after he was placed on the medical bed.

{¶13} After considering the foregoing testimony, the trial court found appellant guilty of felonious assault and assault and not guilty of harassment with a bodily substance. The

court proceeded to sentence appellant that same day, imposing a four-to-six-year indefinite prison term for felonious assault and a concurrent 36-month prison term for assault.

{¶14} Appellant appealed his conviction and sentence, raising three assignments of error for review.

{¶15} Assignment of Error No. 1:

{¶16} THE VERDICT WAS AGAINST THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶17} In his first assignment of error, appellant argues his convictions for felonious assault and assault were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶18} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶19} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and

all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*, citing *Thompkins*, 78 Ohio St.3d at 387. Furthermore, although the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶20} Appellant was convicted of felonious assault in violation of R.C. 2903.11(A)(1), which states that "[n]o person shall knowingly * * * [c]ause serious physical harm to another." He was also convicted of assault in violation of R.C. 2903.13(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶21} After reviewing the record, weighing inferences and examining the credibility of witnesses, we find that appellant's convictions for felonious assault and assault are supported by sufficient evidence and are not against the manifest weight of the evidence.

- 7 -

The state presented testimony and evidence from which the trier of fact could have found all the essential elements of the offenses proven beyond a reasonable doubt. With respect to the felonious assault conviction, C.O. Becker's testimony established that appellant struck him multiple times in the face, causing a gash to his forehead, fractures to his nasal cavity and right orbital bone, and a concussion. C.O. Becker's injuries were serious. For months he suffered excruciating plain, sleeplessness, headaches, nausea, sensitivity to light, and forgetfulness. As for the assault conviction, Lt. Kugel's testimony established that appellant charged at him in the prison's infirmary. Appellant dropped his shoulder and made contact with Lt. Kugel's midsection in an attempt to cause physical harm.

{¶22} Appellant challenged the credibility of C.O. Becker's and Lt. Kugel's testimony, arguing that the corrections officers were lying about the events that occurred within his cell and at the infirmary. He contends his version of events, wherein he painted the corrections officers as the violent actors who initiated the physical altercations, was more credible. He also contends that photographs of his cell demonstrate that he never touched the locker box or attempted to throw it at C.O. Becker.

{¶23} "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the tier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17. The trial court, acting as the trier of fact, "take[s] note of any inconsistencies in the witness' testimony and resolve[s] them accordingly, believing all, part, or none of each witness's testimony." *State v. Schils*, 12th Dist. Clermont No. CA2019-08-067, 2020-Ohio-2883, ¶ 18. In rendering guilty verdicts for felonious assault and assault, the trial court expressly stated that it did not find appellant's version of events credible. The court stated, in relevant part:

Mr. Lee, I will tell you that your explanation, as far as the injuries

that – that occurred to the corrections officer in that cell were absolutely incredible to me. You – according to your testimony, this officer, without any reason other than not wanting to be embarrassed, pepper sprayed you, and then proceeded to assault you, but yet you left that cell with little to no injury. And you, with your eyes shut and burning with – were just flailing and not intentionally trying to hit him, caused some pretty significant injuries.

From the Court's perspective, that is absolutely incredible. I – I mean, I'm just – and then – and then with regard to Count 2, you want this Court to believe that three or four or five other corrections officers just simply, for no reason, just began to assault you.

I mean- I just don't – I'm just at a loss for words that – I'm trying to find a picture of Corrections Officer Becker, is what I was trying to do. But this – this kind of damage does not occur from flailing. I'm sorry. I – I just don't see that.

The court further addressed appellant's argument regarding the locker box, noting that "with regard to the foot locker not being disturbed, I can't tell from this picture whether that's a foot locker or not. I don't know. Obviously a scuffle took place inside this cell because everything is – is completely all over the place."

{¶24} Given the credible testimony of C.O. Becker and Lt. Kugel and the photographic and medical evidence of C.O. Becker's injuries, we find that appellant's convictions for felonious assault and assault are supported by sufficient evidence and are not against the manifest weight of the evidence. The trier of fact did not lose its way or create such a manifest miscarriage of justice that appellant's convictions must be reversed. We therefore overrule appellant's first assignment of error.

{¶25} Assignment of Error No. 2:

{¶26} APPELLANT'S SENTENCE IS CONTRARY TO LAW BECAUSE IT DID NOT COMPLY WITH R.C. 2929.19(B)(2)(c).

{¶27} In his second assignment of error, appellant argues, and the state agrees, that the trial court erred when it imposed an indefinite prison term without providing all of

the requisite statutory notifications set forth in R.C. 2929.19(B)(2)(c) at the sentencing hearing.

{¶28} R.C. 2929.19(B)(2)(c) provides that "if the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court *shall do all of the following*:

> (c) If the prison term is a non-life felony indefinite prison term, *notify the offender of all of the following*:
>
> (i)   That it is rebuttably presumed that the offender will be released from service of the sentence on the expiration of the minimum prison term imposed as part of the sentence or on the offender's presumptive earned early release date, as defined in section 2967.271 of the Revised Code, whichever is earlier;
>
> (ii)   That the department of rehabilitation and correction may rebut the presumption described in division (B)(2)(c)(i) of this section if, at a hearing held under section 2967.271 of the Revised Code, the department makes specified determinations regarding the offender's conduct while confined, the offender's rehabilitation, the offender's threat to society, the offender's restrictive housing, if any, while confined, and the offender's security classification;
>
> (iii)   That if, as described in division (B)(2)(c)(ii) of this section, the department at the hearing makes the specified determinations and rebuts the presumption, the department may maintain the offender's incarceration after the expiration of that minimum term or after that presumptive earned early release date for the length of time the department determines to be reasonable, subject to the limitation specified in section 2967.271 of the Revised Code;
>
> (iv) That the department may make the specified determinations and maintain the offender's incarceration under the provisions described in divisions (B)(2)(c)(i) and (ii) of this section more than one time, subject to the limitation specified in section 2967.271 of the Revised Code;
>
> (v)   That if the offender has not been released prior to the expiration of the offender's maximum prison term imposed as part of the sentence, the offender must be released upon the expiration of that term.

(Emphasis added.)

{¶29} By indicating that the sentencing court "shall do all of the following" and "notify the offender of all of the following," the legislature clearly placed a mandatory duty upon the trial court to inform the defendant of all five relevant notifications. "Thus, when sentencing an offender to a non-life felony indefinite prison term under the Reagan Tokes Law, a trial court must advise the offender of the five notifications set forth in R.C. 2929.19(B)(2)(c) at the sentencing hearing to fulfill the requirements of the statute." *State v. Hodgkin*, 12th Dist. Warren No. CA2020-08-048, 2021-Ohio-1353, ¶ 24. The failure to advise the defendant of any of the five notifications constitutes error and a remand for the limited purpose of permitting the sentencing court to provide the mandatory notifications required by R.C. 2929.19(B)(2)(c) is necessary. *State v. Paul*, 12th Dist. Clinton No. CA2020-08-010, 2021-Ohio-1628, ¶ 22-23 (finding reversible error where three of the notifications listed in R.C. 2929.19[B][2][c] were omitted by the trial court and remanding for the "sole and limited purpose of providing the mandatory notifications" required by the statute).

{¶30} "While the trial court is not required to recite the statutory language verbatim in providing the notifications to the defendant at sentencing, the record must nonetheless reflect that each of the necessary notifications were provided." *State v. Suber Brown*, 12th Dist. Butler No. CA2020-09-099, 2021-Ohio-2291, ¶ 17. After reviewing the record, we find that the trial court failed to advise appellant of all of the required notifications set forth in R.C. 2929.19(B)(2)(c). Specifically, the trial court failed to advise appellant that pursuant to R.C. 2929.19(B)(2)(c)(ii), the DRC must hold a hearing to rebut the presumption that he would be released after serving a minimum four-year term and that the DRC could make specified determinations regarding his conduct while confined, his rehabilitation, his threat to society, his restrictive housing, if any, while confined, and his security classification in rebutting the presumption.

{¶31} Given the foregoing omissions in the trial court's notification when imposing

the indefinite sentence, we sustain appellant's second assignment of error to the extent it challenges the trial court's failure to comply with R.C. 2929.19(B)(2)(c). Appellant's sentence is reversed and this matter remanded for the sole purpose of resentencing appellant in accordance with the requirements set forth in R.C. 2929.19(B)(2)(c). *See, e.g., Brown Suber* at ¶ 17-18; *Paul* at ¶ 22-23; *Hodgkin* at ¶ 25. However, we emphasize that our reversal and remand is only for the purpose of complying with the foregoing statute and in no way affects the validity of the underlying conviction or any other aspect of the sentence imposed by the trial court. In other words, appellant is not entitled to be sentenced anew and the matter is remanded to the trial court for the sole and limited purpose of providing the mandatory notifications of R.C. 2929.19(B)(2)(c).

{¶32} Assignment of Error No. 3:

{¶33} AS AMENDED BY THE REAGAN TOKES ACT, OHIO REVISED CODE SECTION 2929.14(A)(1)(a) and (A)(2)(a) AS APPLIED TO APPELLANT VIOLATES THE CONSTITUTIONS OF THE UNITED STATES AND THE STATE OF OHIO, THUS MAKING APPELLANT'S SENTENCE UNCONSTITUTIONAL.

{¶34} In his third assignment of error, appellant argues the indefinite sentence imposed by the trial court pursuant to the Reagan Tokes Law is unconstitutional as it violates the separation-of-powers doctrine, impinges on his constitutional right to a jury, and runs afoul of his due process rights.[1] However, it is undisputed that appellant did not raise a challenge to the constitutionality of the Reagan Tokes Law with the trial court. As this court has repeatedly held, "arguments challenging the constitutionality of the Reagan Tokes Law are forfeited and will not be heard for the first time on appeal in cases where the

---

1. The Reagan Tokes Law requires that a court imposing a prison term under R.C. 2929.14(A)(1)(a) or (2)(a) for a first- or second-degree felony committed on or after March 22, 2019 impose a minimum prison term under that provision and a maximum prison term determined under R.C. 2929.144(B).

appellant did not first raise the issue with the trial court." *State v. Blaylock*, 12th Dist. Butler No. CA2020-11-113, 2021-Ohio-2631, ¶ 7, citing *Hodgkin*, 2021-Ohio-1353, ¶ 11; *State v. Teasley*, 12th Dist. Butler No. CA2020-01-001, 2020-Ohio-4626, ¶ 9; *State v. Alexander*, 12th Dist. Butler No. CA2019-12-204, 2020-Ohio-3838, ¶ 8-9; *State v. Roberson*, 12th Dist. Warren No. CA2021-01-003, 2021-Ohio-3705, ¶ 39-40.

{¶35} Given this court's precedent declining to hear any arguments challenging the constitutionality of the Reagan Tokes Law in cases where the issue was not first raised with the trial court, appellant's third assignment of error is overruled.[2]

{¶36} Judgment affirmed in part, reversed in part, and remanded for the sole purpose of resentencing so that appellant's sentence complies with R.C. 2929.19(B)(2)(c).

M. POWELL, P.J., and PIPER, J., concur.

---

2. We note that even if appellant had not forfeited his challenge to the constitutionality of the Reagan Tokes Law, this court has already determined that R.C. 2967.271 does not run afoul of an offender's due process rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution. *State v. Jackson*, 12th Dist. Butler No. CA2020-07-077, 2021-Ohio-778, ¶ 15; *State v. Morris*, 12th Dist. Butler No. CA2019-12-205, 2020-Ohio-4103, ¶ 10; *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837, ¶ 17. This court has also determined that the Reagan Tokes Law does not violate the separation-of-powers doctrine. *State v. Suder*, 12th Dist. Clermont Nos. CA2020-06-034 and CA2020-06-035, 2021-Ohio-465, ¶ 25. The same is true as it relates to a challenge alleging the Reagan Tokes Law impinges on an offender's constitutional right to a jury. *State v. Rogers*, 12th Dist. Butler No. CA2021-02-010, 2021-Ohio-3282, ¶ 20.