[Cite as *State v. Rose*, 2022-Ohio-2454.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-06-062 |
| | : | O P I N I O N |
| - vs - | | 7/18/2022 |
| | : | |
| EILEEN A. ROSE, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2021-02-0164

Michael T. Gmoser, Butler County Prosecuting Attorney, and Willa Concannon, Assistant Prosecuting Attorney, for appellee.

Repper-Pagan Law, Ltd., and Christopher J. Pagan, for appellant.

**HENDRICKSON, J.**

{¶1} Appellant, Eileen A. Rose, appeals from her conviction and sentence in the Butler County Court of Common Pleas following her guilty plea to aggravated arson. For the reasons set forth below, we affirm her conviction and sentence.

{¶2} On January 30, 2021, approximately three days after being released from prison on a prior conviction, appellant set fire to a hotel room in Hamilton, Butler County, Ohio. After setting the fire, appellant left the hotel and walked to a nearby business. She

then called 9-1-1 to report her actions. Appellant claimed hallucinating voices told her to start the fire. Appellant was subsequently arrested and indicted on one count of aggravated arson in violation of R.C. 2909.02(A)(1), a felony of the first degree, and one count of aggravated arson in violation of R.C. 2909.02(A)(2), a felony of the second degree. Both offenses were accompanied by a repeat violent offender specification under R.C. 2941.149.

{¶3} At arraignment, appellant entered pleas of not guilty and not guilty by reason of insanity ("NGRI"). On April 2, 2021, the trial court ordered the Forensic Evaluation Service Center to conduct a competency evaluation and a NGRI evaluation. On April 8, 2021, Carla S. Dreyer, Psy.D., met with appellant for an hour to evaluate her. Dr. Dreyer also reviewed court documents relating to appellant's pending aggravated arson charges, photographs, reports, and recordings relating to the arson investigation and arrest of appellant, an undated "Offender Details" report from the Ohio Department of Rehabilitation and Correction ("ODRC"), an October 23, 2000 psychiatric evaluation completed by Dr. Stephen Beck, a psychiatrist at the center for Forensic Psychiatry (the "2000 Beck Evaluation"), and a November 8, 2000 letter from Dr. Beck to Butler County Children's Services (the "2000 BCCS Letter"). On April 14, 2021, Dr. Dreyer issued two reports, one addressing appellant's mental condition at the time of the charged offenses in accordance with R.C. 2945.371(G)(4) ("the NGRI report") and the other report addressing appellant's competency to stand trial in accordance with R.C. 2945.371(G)(3) ("the competency report"). In the competency report, Dr. Dreyer opined that appellant was competent, stating that "to a reasonable degree of psychological certainty, * * * the defendant is currently capable of understanding the nature and objective of the proceedings against her and is currently capable of assisting counsel in preparing for her defense." Dr. Dreyer recommended that appellant "abstain from substances of abuse and maintain compliance with her psychotropic medication regimen in order to maintain her competency." As for the

NGRI report, Dr. Dreyer opined that "the defendant did not suffer from a severe mental defect or severe mental disease that prevented her from knowing the wrongfulness of her behavior at the time of the offenses charged. As such, it is my opinion that the defendant does not meet the criteria for the Not Guilty By Reason of Insanity plea for the offenses charged."

{¶4} A competency hearing was held on April 29, 2021. At this time the state and appellant's counsel jointly stipulated to the admission of Dr. Dreyer's April 14, 2021 reports and further stipulated that there was no need for testimony from either side. When specifically questioned by the court if there was "any further evidence that either the State or Defense [C]ounsel wishe[d] to present" or if there were "[a]ny arguments that either the State or Defense [Counsel] wishe[d] to present," defense counsel declined to introduce any additional evidence or argument. The court then inquired if "[a]ny further reports [are] requested from either party with respect to the issue of sanity," and defense counsel stated, "No, Your Honor. Not based on the report we have." The court reviewed Dr. Dreyer's reports and concluded that appellant was competent to stand trial. An entry to this effect was filed by the court on April 30, 2021.

{¶5} On May 27, 2021, following plea negotiations, appellant pled guilty to aggravated arson in violation of R.C. 2909.02(A)(1), a felony of the first degree, in exchange for the accompanying repeat violent offender specification and the other arson count being dismissed. The trial court engaged appellant in a Crim.R. 11(C)(2) colloquy, advising her of the rights she would be waiving and of the maximum sentence she faced by pleading guilty. The court also explained to appellant that she faced a lifetime reporting requirement on the arson offender registry. Appellant indicated she understood the rights she was waiving and the potential penalties she faced, and she pled guilty after the state's recitation of the following facts:

[PROSECUTOR]: On or about January 30, 2021, in Butler County, Ohio, the Defendant, Eileen Rose, did, by means of fire, knowingly create a substantial risk of serious harm to any person other than the offender, which constitutes the offense of aggravated arson, a first-degree felony, in violation of R.C. 2909.02(A)(1), against the peace and dignity of the State of Ohio, to wit, she set fire to her hotel room.

Upon questioning by the trial court, appellant stated she set fire to her "mattress and everything in the [hotel] room." She further admitted that there were other people staying at the hotel at the time she set her room on fire. The trial court accepted appellant's guilty plea and found her guilty of the offense of aggravated arson. Appellant was subsequently sentenced to an indefinite mandatory prison term of a minimum of 10 years and a maximum of 15 years under the Reagan Tokes Law. Appellant was also ordered to register on the arson offender registry for life.

{¶6} Appellant appealed from her conviction and sentence, raising two assignments of error for review.

{¶7} Assignment of Error No. 1:

{¶8} THE EVALUATOR VIOLATED FORMER R.C. 2945.371(F) BY DISREGARDING RELEVANT EVIDENCE OF ROSE'S MENTAL CONDITION.

{¶9} In her first assignment of error, appellant challenges the thoroughness of Dr. Dreyer's competency and NGRI evaluations, contending Dr. Dreyer failed to "consider all relevant evidence" in issuing opinions about appellant's competency to stand trial and appellant's mental state at the time the arson offenses were committed.

{¶10} "NGRI is an affirmative defense that a defendant must prove by a preponderance of the evidence." *State v. Magee*, 12th Dist. Clermont No. CA2019-11-083, 2020-Ohio-4351, ¶ 14, citing *State v. Monford*, 190 Ohio App.3d 35, 2010-Ohio-4732, ¶ 70 (10th Dist.). "A person is 'not guilty by reason of insanity' relative to a charge of an offense only if the person proves, in the manner specified in section 2901.05 of the Revised Code,

- 4 -

that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts." R.C. 2901.01(A)(14).

{¶11} "[T]he standard for competency is different, in that it relates to the defendant's present mental condition and [her] ability to understand the nature of the proceedings against [her] and to assist [her] counsel in [her] defense." *Monford* at ¶ 69. A defendant is presumed to be competent unless it is demonstrated by a preponderance of the evidence that she is incapable of understanding the nature and objective of the proceedings against her or of presently assisting in her defense. R.C. 2945.37(G); *State v. Murphy*, 173 Ohio App.3d 221, 2007-Ohio-4535, ¶ 28 (12th Dist.).

{¶12} Pursuant to R.C. 2945.371(A),

> If the issue of a defendant's competence to stand trial is raised or if a defendant enters a plea of not guilty by reason of insanity, the court may order one or more evaluations of the defendant's present mental condition or, in the case of a plea of not guilty by reason of insanity, of the defendant's mental condition at the time of the offense charged. An examiner shall conduct the evaluation.[1]

The same examiner who evaluates a defendant's competence to stand trial may also evaluate a defendant who has entered a plea of not guilty by reason of insanity. R.C. 2945.371(I). "In conducting an evaluation of a defendant's mental condition at the time of the offense charged, the examiner shall consider all relevant evidence." R.C. 2945.371(F). The examiner is required to prepare and file separate reports on the issue of competence to stand trial and the defense of not guilty by reason of insanity. R.C. 2945.371(I). The reports must include all of the following:

(1) The examiner's findings;

---

1. R.C. 2945.37, 2945.371, and 2945.378 were amended by 2021 Am.Sub.S.B. No. 2, which became effective on August 3, 2021. The proceedings at issue in the present case are governed by the prior versions of the competency statutes.

(2) The facts in reasonable detail on which the findings are based;

(3) If the evaluation was ordered to determine the defendant's competence to stand trial, all of the following findings or recommendations that are applicable:

(a) Whether the defendant is capable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense;

(b) If the examiner's opinion is that the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, whether the defendant presently is mentally ill or has an intellectual disability and, if the examiner's opinion is that the defendant presently has an intellectual disability, whether the defendant appears to be a person with an intellectual disability subject to institutionalization by court order;

(c) If the examiner's opinion is that the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the examiner's opinion as to the likelihood of the defendant becoming capable of understanding the nature and objective of the proceedings against the defendant and of assisting in the defendant's defense within one year if the defendant is provided with a course of treatment;

(d) If the examiner's opinion is that the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense and that the defendant presently is mentally ill or has an intellectual disability, the examiner's recommendation as to the least restrictive placement or commitment alternative, consistent with the defendant's treatment needs for restoration to competency and with the safety of the community.

(4) If the evaluation was ordered to determine the defendant's mental condition at the time of the offense charged, the examiner's findings as to whether the defendant, at the time of the offense charged, did not know, as a result of a severe mental disease or defect, the wrongfulness of the defendant's acts charged.

R.C. 2945.371(G).

{¶13} If the issue of a defendant's competency is raised prior to trial, the trial court

is required to conduct a competency hearing. R.C. 2947.37(B). At the hearing, "[t]he prosecutor and defense counsel may submit evidence on the issue of defendant's competenc[y]" and a "written report of the evaluation of the defendant may be admitted into evidence * * * by stipulation." R.C. 2945.37(E). "[I]f the court, upon conducting the hearing provided for in section 2945.37 of the Revised Code, finds that the defendant is competent to stand trial, the defendant shall be proceeded against as provided by law." R.C. 2945.38(A).

{¶14} The record demonstrates the trial court complied with the requirements of R.C. 2945.37, 2945.371, and 2945.38. As soon as appellant's counsel raised the issue of appellant's competency and entered an NGRI plea on behalf of appellant, the court ordered a competency evaluation and NGRI evaluation. Dr. Dreyer conducted the NGRI evaluation and competency evaluation of appellant on April 8, 2021 and issued separate NGRI and competency reports on April 14, 2021, the contents of which complied with the requirements of R.C. 2945.371(G). At a competency hearing, the prosecutor and defense counsel stipulated to the admission of Dr. Dreyer's competency and NGRI reports. Defense counsel declined to introduce any additional evidence or argument surrounding appellant's competency to stand trial or her sanity at the time the offenses were committed. Defense counsel also declined to request any further reports or evaluations of appellant's sanity or competence. Despite these facts, appellant now maintains that "Dr. Dreyer failed to review all relevant evidence of [her] mental condition." Appellant maintains that before issuing findings about appellant's competency and mental condition at the time of the arson offenses, Dr. Dreyer should have obtained and considered (1) a 1998 Clermont Mercy hospitalization record where appellant was allegedly diagnosed with paranoid schizophrenia, (2) appellant's ODRC residential treatment records, and (3) appellant's school records.

**{¶15}** As an initial matter, we note that the documents mentioned by appellant are not in the record before this court. Appellant's appellate counsel has represented that he undertook steps after the appeal was filed to obtain copies of the documents Dr. Dreyer relied on in forming her opinions as to appellant's competency and sanity. Appellate counsel maintains that the 2000 Beck Evaluation referenced a 1998 Clermont Mercy hospitalization record. The 2000 Beck Evaluation, however, was not included in the record on appeal. As this court has previously recognized, on a direct appeal, we are limited to considering only the record on appeal from the trial court. *State v. Bush*, 12th Dist. Clermont No. CA2015-06-046, 2016-Ohio-551, ¶ 19. The record on appeal consists of "[t]he original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court[.]" App.R. 9(A)(1). This court cannot consider arguments based on exhibits or evidence that were not presented to the trial court or that otherwise do not appear in the record on appeal. *Miller v. Ohio State Hwy. Patrol*, 12th Dist. Fayette No. CA2019-08-017, 2020-Ohio-3231, ¶ 45. Accordingly, as the 2000 Beck Evaluation was not in the record on appeal, this court has no knowledge of whether the 2000 Beck Evaluation referenced a 1998 Clermont Mercy hospitalization record or whether there was any reference to a paranoid schizophrenia diagnosis in said record.[2]

**{¶16}** Appellant asks this court to speculate that additional data, be it the 1998

---

2. In her reply brief, appellant raises a new argument challenging the admissibility of Dr. Dreyer's NGRI and competency reports, contending that under *State v. Chapin*, 67 Ohio St.2d 437, 442 (1981) and *State v. Jones*, 9 Ohio St.3d 123 (1984), syllabus, the reports should not have been admitted as they failed to comply with the requirements of Evid.R. 703. Appellant contends that for the NGRI report and the competency report to have been admissible under Evid.R. 703, the underlying documents and reports that Dr. Dreyer reviewed to inform her opinion as to appellant's competency and sanity also had to be admitted into evidence. We find that appellant's Evid.R. 703 admissibility arguments are not properly before this court. As we have previously recognized, "[a]n appellant may not use a reply brief to raise new issues or assignments of error." *State v. Renfro*, 12th Dist. Butler No. CA2011-07-142, 2012-Ohio-2848, ¶ 28. *See also State v. West*, 12th Dist. Butler No. CA2017-07-091, 2018-Ohio-640, ¶ 23, fn. 4.

Clermont Mercy hospitalization record, appellant's school records, her ODRC residential treatment records, or a combination of the records, would have had an impact on Dr. Dreyer's NGRI and competency evaluations and subsequent findings. Even if we assume such documents exist, appellant has failed to demonstrate any prejudice from Dr. Dreyer's failure to review said documents. It is purely speculative to assume that consideration of such documents would have made any difference in the outcome of Dr. Dreyer's competency and NGRI evaluations or findings. *See State v. Ferguson*, 108 Ohio St.3d 451, 2006-Ohio-1502, ¶ 55 (finding there was not prejudicial error where it was "purely speculative" that additional neurological testing would have made a difference in the outcome of a defendant's competency evaluation); *State v. Mink*, 101 Ohio St.3d 350, 2004-Ohio-1580, ¶ 94 (finding there was not prejudicial error where it was "purely speculative" whether the psychologist's review of defendant's medical or mental health records would have made any difference in the outcome of his competency evaluations).

{¶17} Furthermore, though appellant now contends that Dr. Dreyer should have relied on additional evidence in forming her opinions as to appellant's sanity and competency, a stance not taken by appellant or her defense counsel during the competency hearing, this court has previously recognized that "[t]he adequacy of the 'data relied upon by the expert who examined the [defendant's competency] is a question for the trier of fact.'" *State v. Neely*, 12th Dist. Madison No. CA2002-02-002, 2002-Ohio-7146, ¶ 10, quoting *State v. Williams*, 23 Ohio St.3d 16, 19 (1986). *See also State v. Bullocks*, 12th Dist. Warren No. CA2010-01-008, 2010-Ohio-2705, ¶ 7. "An appellate court will not disturb a competency determination if there was 'some reliable, credible evidence supporting the trial court's conclusion that [the defendant] understood the nature and objective of the proceedings against [her].'" *Neely* at ¶ 10, quoting *Williams* at 19.

{¶18} In the present case, there was reliable, credible evidence supporting the trial

court's finding that appellant was capable of understanding the nature and objective of the proceedings against her and of assisting in her defense. There was also reliable, credible evidence presented which demonstrated that at the time appellant committed the underlying arson offenses, she was not suffering from a severe mental defect or disease and knew the wrongfulness of her conduct. From her in-person mental status examination of appellant and her review of court documents, the ODRC "Offender Details" report, the 2000 Beck Evaluation, the 2000 BCCS Letter, and photographs, reports, and recordings related to the arson investigation, Dr. Dreyer learned that appellant has had mental health issues since she was a child. Appellant self-reported that she had been diagnosed with bipolar disorder, antisocial personality disorder, borderline personality disorder, posttraumatic stress disorder, obsessive compulsive disorder, and anxiety. Appellant has received mental health treatment for such issues since childhood. Most recently, while incarcerated, appellant was placed on psychotropic medications and placed in a residential treatment unit.

{¶19} Appellant reported a history of hearing auditory hallucinations which told her to "do bad things," but indicated the hallucinations were associated with stress and her use of crack cocaine. The hallucinations were managed with the use of psychotropic medications. Appellant reported to Dr. Dreyer that prior to setting fire to the hotel on January 30, 2021, appellant had not heard the voices for years – not since initially going to prison for a prior offense. On the day she set the hotel room on fire, appellant had used crack cocaine before the voices started telling her to "do bad things." Appellant told Dr. Dreyer that though she "tried not to," she eventually did as the voices said and set her hotel mattress on fire with a lighter. Appellant then left the hotel after the fire alarm in her room went off. Appellant did not tell anyone about the fire or try to put out the fire before leaving the hotel. Once she left the hotel, appellant purchased more crack cocaine. After using the

drug, appellant called 9-1-1 to report the fire. Appellant informed Dr. Dreyer she called 9-1-1 because she was concerned that someone might get hurt by the fire.

{¶20} After conducting her evaluation of appellant, Dr. Dreyer opined that appellant had not suffered from a severe mental defect or disease at the time the arson offenses were committed. In reaching this conclusion, Dr. Dreyer noted

> Ms. Rose reported a lengthy history of mental health issues, noting that these have been adequately managed with psychotropic medication and sobriety from substances of abuse. While she reported that she was experiencing auditory hallucinations at the time of the offenses charged, she also noted the voluntary use of crack cocaine, explaining that this drug has historically led her to experience psychotic symptoms. The defendant's presentation and the available collateral information suggest that her symptoms at the time of the offenses charged were substance-induced. Further, this substance-induced psychosis is not considered a severe mental disease.

{¶21} Furthermore, while appellant had suggested that she had not known that setting the hotel room on fire was wrong at the time she committed the act, Dr. Dreyer found that appellant's "behavior following the instant offenses suggest[ed] otherwise." As the doctor noted,

> the defendant immediately left her [h]otel room after setting the fire, which would suggest that she knew what she did was wrong and she was trying to avoid detection for such. After going to use more crack cocaine, Ms. Rose contacted 911 to report the fire, with this behavior, as well as the statements she made to police, indicating that she knew what she did was wrong and was concerned about potential ramifications of such. Finally, the defendant clearly recalled her prior fire-setting behavior and the consequences imposed for such, explaining that she has previously been known to set fires when stressed or hearing voices while using drugs. Her prior experiences with facing consequences further support the hypothesis that she was capable of knowing the wrongfulness of her behavior at the time of the offenses charged.

{¶22} Dr. Dreyer noted that when appellant was discussing her actions and the charges she faced, appellant presented her thoughts in a logical, coherent, and goal-

directed manner. Dr. Dreyer indicated appellant was alert, oriented, capable of abstract thinking, and her memory and attention abilities were intact. Although appellant had been on an individual education program in school, had only completed ninth grade, and her intellectual functioning was estimated to be in the low average range, appellant was able to discuss the charges she faced appropriately. Dr. Dreyer's report indicated appellant could not only distinguish between misdemeanor and felony charges, but she understood the possible penalties she faced if she were convicted of the felony arson offenses. Appellant understood the difference between a bench trial and a jury trial, knew what the prosecutor's and defense counsel's roles were in trial proceedings, and she was also able to name all available pleas to the charges and demonstrate an adequate understanding of said pleas. Based on appellant's capability of understanding the nature and objective of the proceedings against her and her ability to assist counsel in the preparation of her defense, Dr. Dreyer opined that appellant was competent to stand trial. In so opining, the doctor specifically stated the following:

> [T]he defendant demonstrated an adequate understanding of the charges against her, as well as the seriousness of such. She also demonstrated an adequate understanding of the roles of the courtroom participants, possible outcomes, legal strategies, and legal options available to her. Ms. Rose's presentation suggests that she is currently capable of relating adequately to an attorney, disclosing available facts to an attorney, challenging prosecuting witnesses, testifying relevantly, comprehending instructions, and evaluating legal advice. She is clearly motivated for a favorable outcome. She further is currently capable of managing her behavior appropriately in a courtroom setting and tolerating the stress of a trial.

{¶23} Reliable, credible evidence was therefore presented demonstrating that appellant was competent to stand trial and that she was not suffering from a severe mental disease or defect at the time the arson offenses were committed. The record further demonstrates that Dr. Dreyer complied with R.C. 2945.371 in conducting the competency

- 12 -

and NGRI evaluations and in filing her reports. Appellant's claim that Dr. Dreyer failed to consider all relevant evidence in issuing her opinions about appellant's competency and mental state at the time the arson offenses were committed is without merit, and appellant's first assignment of error is overruled.

{¶24} Assignment of Error No. 2:

{¶25} THE REAGAN TOKES LAW IS UNCONSTITUTIONAL.

{¶26} In her second assignment of error, appellant challenges the imposition of the indefinite prison term imposed by the trial court, arguing that the Reagan Tokes Law is unconstitutional as it violates her procedural due process rights and right to a jury trial and is otherwise void for vagueness. She further contends that her trial counsel provided ineffective assistance for failing to challenge the constitutionality of the indefinite sentence.

{¶27} Under the Reagan Tokes Law, qualifying first- and second-degree felonies committed on or after March 22, 2019, are now subject to the imposition of indefinite sentences. *State v. Hodgkin*, 12th Dist. Warren No. CA2020-08-048, 2021-Ohio-1353, ¶ 9. The indefinite terms consist of a minimum term selected by the sentencing judge from a range of terms set forth in R.C. 2929.14(A) and a maximum term determined by a statutory formula set forth in R.C. 2929.144. *State v. Tutt*, 12th Dist. Preble No. CA2020-02-002, 2021-Ohio-96, ¶ 10. The maximum term equals the minimum term imposed on the offender plus 50 percent of that term. *Hodgkin* at ¶ 9.

{¶28} An offender sentenced under the Reagan Tokes Law has a rebuttable presumption of release at the conclusion of the offender's minimum term. R.C. 2967.271(B). "However, the Ohio Department of Rehabilitation and Correction ("ODRC") may rebut that presumption of release if it finds, at a hearing, that any of the factors set forth in R.C. 2967.271(C)(1), (2), and (3) apply." *State v. Rogers*, 12th Dist. Butler No. CA2021-02-010, 2021-Ohio-3282, ¶ 9. If the ODRC rebuts the presumption, it may keep the offender in

prison for an additional "reasonable period," but the additional time "shall not exceed the offender's maximum prison term." R.C. 2967.271(C).

{¶29} When the trial court imposed an indefinite mandatory prison term of a minimum of 10 years and a maximum of 15 years on appellant, defense counsel failed to object to the sentence on the ground that the Reagan Tokes Law was unconstitutional. This court has repeatedly held, "arguments challenging the constitutionality of the Reagan Tokes Law are forfeited and will not be heard for the first time on appeal in cases where the appellant did not first raise the issue with the trial court." *State v. Blaylock*, 12th Dist. Butler No. CA2020-11-113, 2021-Ohio-2631, ¶ 7, citing *Hodgkin*, 2021-Ohio-1353, ¶ 11; *State v. Teasley*, 12th Dist. Butler No. CA2020-01-001, 2020-Ohio-4626, ¶ 9; *State v. Alexander*, 12th Dist. Butler No. CA2019-12-204, 2020-Ohio-3838, ¶ 8-9; *State v. Roberson*, 12th Dist. Warren No. CA2021-01-003, 2021-Ohio-3705, ¶ 39-40; *State v. Lee*, 12th Dist. Warren No. CA2021-05-047, 2022-Ohio-248, ¶ 34-35.

{¶30} However, an appellate court "has discretion to consider a forfeited constitutional challenge to a statute. We may review the trial court decision for plain error[.]" *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 16, citing *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 377-378. The appellate court "require[s] a showing that but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice." *Id.*, citing *State v. Davis*, 127 Ohio St.3d 268, 2010-Ohio-5706, ¶ 29. "The burden of demonstrating plain error is on the party asserting it." *Id.* As appellant set forth a plain-error argument in her appellate brief, we find it appropriate to review her constitutional challenge to the Reagan Tokes Law under a plain-error standard of review.

**Due Process Rights**

{¶31} Appellant maintains that the imposition of an indefinite sentence violates her

due process rights by "exposing her to an indeterminate 5 years beyond the mandatory 10-year minimum." This argument has been considered and rejected by this court on numerous occasions. *See State v. Henderson*, 12th Dist. Warren No. CA2020-11-072, 2021-Ohio-3564, ¶ 13-16; *State v. Jackson*, 12th Dist. Butler No. CA2020-07-077, 2021-Ohio-778, ¶ 12-15; *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837, ¶ 7-17. As appellant's due-process challenge only presents arguments that have previously been considered and rejected by this court, we find that appellant has failed to demonstrate plain error with respect to her due-process arguments.[3]

## Jury Trial Right

**{¶32}** Appellant also argues that the Reagan Tokes Law violates her Sixth Amendment rights to a trial by jury as R.C.2967.271 permits the ODRC to extend her prison term for up to five years for administrative violations which "are non-jury facts, not proved beyond a reasonable doubt." Appellant acknowledges that this court previously determined that the Reagan Tokes Law does not violate an offender's constitutional right to trial by jury in *State v. Rogers*, 12th Dist. Butler No. CA2021-02-010, 2021-Ohio-3282, ¶ 13-20. However, she argues our analysis in *Rogers* was flawed as we failed to consider the effect of the Supreme Court's decision in *Alleyne v. United States*, 570 U.S. 99, 113 S.Ct. 2151 (2013).

**{¶33}** In *Rogers*, we analyzed an offender's argument that Reagan Tokes Law was

---

3. In support of her argument that the Reagan Tokes Law violates procedural due process rights, appellant relied on the Eighth District's decision in *State v. Sealey*, 8th Dist. Cuyahoga No. 109670, 2021-Ohio-1949. In *Sealy*, the court determined that the Reagan Tokes Law was unconstitutional as "R.C. 2967.271 'does not contain adequate procedural protections to prevent the deprivation of that interest without due process of law.'" *Id.* at ¶ 45, quoting *CT Ohio Portsmouth, LLC v. Ohio Dept. of Medicaid*, 10th Dist. Franklin No. 19AP-588, 2020-Ohio-5091, ¶ 55. However, *Sealy* was in conflict with other decisions released by the Eighth District, wherein the court had concluded the Reagan Tokes Law did not violate procedural due process rights. The Eighth District considered the constitutionality of the Reagan Tokes Law en banc and released *State v. Delvallie*, 8th District Cuyahoga No. 109315, 2022-Ohio-470, which expressly overruled *Sealy* after concluding that the Reagan Tokes Law was constitutional. *Sealy*, therefore, does not provide support for appellant's due process arguments.

unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000) and related cases. In *Apprendi*, a jury convicted the defendant of a firearm crime that carried a maximum prison sentence of ten years. However, a judge sought to impose a longer sentence pursuant to a statute that authorized him to do so if he found, by a preponderance of the evidence, that the defendant had committed the crime with racial bias. The Supreme Court held this sentencing scheme unconstitutional because "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt" or admitted by the defendant. *Apprendi* at 490. The state could not evade this traditional restraint on the judicial power by simply calling the process of finding new facts and imposing a new punishment a judicial "sentencing enhancement." *Id.* at 495. The Supreme Court recognized that "the relevant inquiry is one not of form, but of effect – does the required [judicial] finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Id.* at 494.

{¶34} In *Rogers*, we distinguished *Apprendi*. We found that under the Reagan Tokes Law, the trial court imposes both a minimum and maximum term and that the only sentencing discretion provided to the trial court lies in the court's selection of the minimum term under R.C. 2929.14(A)(1)(a) and (A)(2)(a). *Rogers* at ¶ 17. The maximum term is determined simply by mathematical formula, and "'nothing within any provision codified under the Reagan Tokes Law permits any branch of government to impose a sentence beyond the maximum term as defined under R.C. 2929.144.'" *Id.* at ¶ 20, quoting *State v. Gamble*, 8th Dist. Cuyahoga No. 109613, 2021-Ohio-1810, ¶ 44. Accordingly, we found that under the Reagan Tokes Law, the maximum term imposed is authorized by the jury's guilty verdict and is not based on any factors not submitted to the jury. *Id.* at ¶ 17. We therefore concluded that "[t]he Reagan Tokes Law * * * does not violate an offender's constitutional rights to a trial by jury." *Id.* at ¶ 20.

**{¶35}** Appellant argues that "*Alleyne*, not *Apprendi*, is the proper case to analyze Reagan Tokes". Appellant describes *Alleyne*, 570 U.S. 99, as having extended *Apprendi* to "non-jury facts" that elevate punishment beyond a mandatory minimum sentence. Appellant argues that the "non-jury facts" present in this case are the considerations the ODRC could make to allow the ODRC to rebut the presumption of release and maintain the offender's incarceration beyond the mandatory minimum.

**{¶36}** In *Alleyne*, a jury found that the defendant had "used or carried a firearm" during and in relation to a crime of violence. The trial court, in sentencing the defendant, found that a firearm had been brandished. With this finding, the trial court was permitted by statute to impose a seven-year minimum sentence, whereas a finding that the firearm was merely "use[d] or carrie[d]" resulted in a five-year minimum sentence. *Alleyne* at 103-104, citing 18 U.S.C. 924(c)(1)(A). The Supreme Court vacated the seven-year minimum sentence imposed on the defendant, holding that "[a]ny fact that, by law increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt. * * * Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Id.* at 103.

**{¶37}** As one of our sister courts recently recognized, the holding in *Alleyne* is "simply irrelevant to the Reagan Tokes Law." *State v. Delvallie*, 8th District Cuyahoga No. 109315, 2022-Ohio-470, ¶ 41. As the *Delvallie* court noted,

> No provision under the Reagan Tokes Law authorizes a sentencing court, or ODRC for that matter, to impose a sentence beyond the maximum set forth in the sentencing statutes or to elevate the minimum term beyond the ranges set forth in R.C. 2929.14(A)(1)(a) and (A)(2)(a). R.C. 2929.144 and 2929.14(A)(1)(a)-(A)(2)(a) provide no discretion to the trial court in imposing the maximum term based on the offender having pleaded or been found guilty of the underlying qualifying felony offense. The only discretion lies with the imposition of the

minimum term, which is no different than the discretion to sentence within the definite sentencing range for nonqualifying felony offenses.

*Id.* *Accord State v. Ratliff*, 5th Dist. Guernsey No. 21CA000016, 2022-Ohio-1372, ¶ 59-61 (finding *Apprendi* and *Alleyne* have no application in a prison disciplinary setting where the ODRC does not have authority to extend the inmate's sentence beyond the maximum sentence imposed by the trial judge). Accordingly, as nothing within any provision codified under the Reagan Tokes Law permits ODRC to impose a sentence beyond the maximum term imposed by the trial court in accordance with R.C. 2929.144, the Reagan Tokes Law does not violate appellant's constitutional rights to a trial by jury. Appellant's reliance on *Alleyne* is misplaced.

**Void for Vagueness Argument**

{¶38} Appellant also challenges the Reagan Tokes Law on the ground that it is void for vagueness as it "fails to provide fair notice of the standards that elevate a sentence beyond the presumptive minimum term." Appellant argues that the General Assembly has failed to establish the standards for prison-security levels despite the fact that a "high prison-security level" is a factor that the ODRC can use to rebut the presumption of release. Appellant notes that security-level standards have been set by the ODRC and include considerations such as gender, age, medical status, and criminal notoriety, which she claims are "unlawful" considerations without further explanation or citation to authority.

{¶39} We find that appellant has failed to articulate how the Reagan Tokes Law is vague. She simply states the law is vague and poses hypothetical questions about how prison-security standards might be determined by the ODRC. She also references an ODRC administrative document that is not part of the record on appeal. Based on the limited argument that was presented in her appellate brief, the record on appeal, and the standard for analyzing and recognizing plain error, we find that appellant has failed to

demonstrate that the Reagan Tokes Law is void for vagueness or that the trial court committed plain error in imposing an indefinite sentence.[4]

## Ineffective Assistance of Counsel

---

4. To the extent appellant's arguments can be construed as a challenge to the prison rule infraction system as a basis for invalidating the Reagan Tokes Law, we overrule her arguments for the reasons expressed in *Delvallie*:

> The challenge to the prison rule infraction system as a reason to invalidate the Reagan Tokes Law cannot be viewed in isolation. No provision of the Reagan Tokes Law creates a new prison rule infraction system permitting ODRC to unilaterally act without recourse or procedural guidance. Ohio Adm.Code 5120-9-08 sets forth an inmate's rights and the procedures the Rules Infraction Board are to follow in imposing any and all institutional infractions upon the inmates. *See, e.g., Oko v. Lake Erie Corr. Inst.*, 11th Dist. Ashtabula No. 2010-A0002, 2010-Ohio-2821, ¶ 3 (overruling a constitutional challenge to the decision by the Rules Infraction Board).
>
> R.C. 2967.271(C) and (D) simply rely on the results of those proceedings, which are conducted under an Ohio Administrative Code section that has not been challenged and, importantly, is not part of the Reagan Tokes Law itself. The maximum-term hearing simply borrows from the results of that rules infraction proceeding, and *Delvallie's* claim that the infraction system is constitutionally infirm impacts the current provisions of the Ohio Revised Code well beyond our current review. R.C. 2967.271(C) (relying on the results of the rules infraction board); ODRC Policy 105-PBD-15, Section VI. B. 1-3. Any challenges to the infraction system must be advanced through a separate writ action when the infraction has been declared and impacts the duration of confinement. *State ex rel. Larkins v. Wilkinson*, 79 Ohio St.3d 477, 479, 1997-Ohio-139, 683 N.E.2d 1139 (1997) (writ of mandamus will not lie "absent evidence that the challenged institutional action would affect the inmate's duration of confinement"), citing *Samuels v. Mockry*, 77 F.3d 34, 37 (2d Cir.1996); *Lane v. Russell*, 109 Ohio App.3d 470, 473, 672 N.E.2d 684 (12th Dist.1996). *Delvallie's* claims with respect to the prison infraction system have no bearing on the Reagan Tokes Law. More to the point, if we were to accept *Delvallie's* conclusion, Ohio Adm.Code 5120-9-08 is likewise to be declared unconstitutional since that creates the framework *Delvallie* questions.
>
> Any conclusion that R.C. 2967.271(C) and (D) deprive offenders of their due process rights is solely based on reviewing R.C. 2967.271 to the exclusion of ODRC rules, policies, or procedures established under R.C. 5120.01. ODRC Policy 105-PBD-15. Through R.C. 2967.271(C) and (D), the legislature tasked ODRC with conducting hearings to determine enforcement of the maximum term imposed under R.C. 2929.144, the notice for which occurs under R.C. 2967.12, the notice statute for parole hearings. The legislature further authorized the director of ODRC to establish policies, rules, and procedures in compliance with its statutory duties based on the legislature's delegation of authority to the executive agency. R.C. 5120.01; ODRC Policy 105-PBD-15, Section I. R.C. 2967.271 is not unconstitutional based on a *Morrissey* violation. [*Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593 (1972)].

*Delvallie*, 2022-Ohio-470 at ¶ 86-88.

**{¶40}** As a final argument within her second assignment of error, appellant contends her trial counsel provided ineffective representation by failing to challenge the constitutionality of the indefinite sentence imposed under the Reagan Tokes Law. This court, however, has already determined that "[t]rial counsel's failure to raise the constitutionality of the Reagan Tokes Law, an argument which has proven unsuccessful in this and other districts, does not constitute ineffective assistance." *State v. Hodgkin*, 12th Dist. Warren No. CA2020-08-048, 2021-Ohio-1353, ¶ 18. *See also State v. Bond*, 12th Dist. Butler No. CA2021-08-103, 2022-Ohio-1628, ¶ 30; *State v. Abner*, 12th Dist. Warren No. CA2021-05-048, 2021-Ohio-4549, ¶ 25; *State v. Roberson*, 12th Dist. Warren No. CA2021-01-003, 2021-Ohio-3705, ¶ 41-44.

**{¶41}** Accordingly, as appellant's trial counsel did not provide ineffective assistance and the Reagan Tokes Law is not unconstitutionally void for vagueness and does not run afoul of appellant's due process rights or rights to a jury trial, we overrule appellant's second assignment of error.

**{¶42}** Judgment affirmed.

S. POWELL, P.J., and BYRNE, J., concur.